**J. Jesus TORRES–AGUILAR,**
Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

No. 99–70096.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 11, 2000

Filed April 23, 2001

Victor D. Nieblas Pradis, Los Angeles, California, for the petitioner.

Steven J. Kim, United States Department of Justice, Washington, D.C., for the respondent.

Before: B. FLETCHER, THOMAS and WARDLAW, Circuit Judges.

THOMAS, Circuit Judge:

We consider in this appeal the scope of our review of due process claims under section 309(c)(4)(E) of the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). In this case, because Torres–Aguilar has failed to allege a colorable due process claim, we dismiss his petition for review for lack of jurisdiction.

I

J. Jesus Torres–Aguilar is a native and citizen of Mexico who first entered the

United States without inspection in 1980. He has a wife and four children who reside in Mexico. From 1980–1989, Torres–Aguilar was self-employed, tuning up cars and doing yard work. In 1989 he was refused amnesty, in part because he had no proof of past employment, so he began working as a data processor in order to create an employment history.

He worked and paid taxes for several years under an assumed name, "Vicente Garcia." While thus employed, he also sent his family about $500 each month. In 1995, he ceased all regular work, and since that time has been unable to send his family monthly support.

The Immigration and Naturalization Service served Torres–Aguilar with an Order to Show Cause why he was not deportable on January 24, 1996. In August of that year, before an immigration judge, Torres–Aguilar conceded deportability and requested suspension of deportation under § 244(a)(1) of the Immigration and Nationality Act ("INA"), and, in the alternative, voluntary departure. On January 31, 1997, after a hearing, the immigration judge denied Torres–Aguilar's request for suspension of deportation, finding that Torres–Aguilar had failed to make the requisite showing that deportation would cause him extreme hardship. INA § 244(a)(1), *codified at* 8 U.S.C. § 1254(a)(1) (now repealed). On December 31, 1998, the Board of Immigration Appeals ("BIA") affirmed the immigration judge's finding, after conducting a de novo review. Torres–Aguilar timely petitioned for review by this court.

## II

This case is governed by IIRIRA's transitional rules. Among other changes, IIRIRA reduced the role and nature of judicial review in immigration proceedings. *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997) ("IIRIRA's replacement section for judicial review ... purports to vest the BIA with final appellate jurisdiction for most INS deportation proceedings."). As of April 1, 1997, § 306(b) of IIRIRA repealed § 106 of the INA, and replaced it with the judicial review provisions in amended INA § 242, now codified at 8 U.S.C. § 1252.

All cases initiated on or after April 1, 1997, are governed solely by INA's permanent, § 242, provisions. *Kalaw*, 133 F.3d at 1150; INA § 242. In general, for deportation proceedings initiated prior to April 1, 1997, old INA § 106 applies. However, for cases initiated prior to April 1, 1997 where the final order of deportation is filed after October 30, 1996 (thirty days after IIRIRA was signed into law), IIRIRA's "transitional rules of judicial review" apply. *See Kalaw*, 133 F.3d at 1150; § 309(c)(4). A deportation order becomes final, *inter alia*, as of the date the BIA renders a decision on appeal from an immigration judge. 8 C.F.R. § 241.31. Because deportation proceedings were initiated against Torres–Aguilar on January 24, 1996, and since a final order of deportation was issued on December 21, 1998, the transitional rules apply to Torres–Aguilar's case.

■ Torres–Aguilar contends that the transitional rules do not apply to his case because his petition was filed on January 24, 1996, thereby bringing him within the "transition window" described in *Kalaw.* Torres–Aguilar interprets the metaphor to mean that the transitional rules apply *only* to cases where the final order of deportation is filed between the two boundary dates. This is plainly incorrect: the transitional rules govern cases initiated *prior* to April 1, 1997 where the final order of deportation is filed *after* October 30, 1996. Thus, § 309(c)(4)(E) applies to this case.

## III

Although IIRIRA has imposed jurisdictional limits on judicial review, courts retain jurisdiction "to determine whether jurisdiction exists." *Aragon–Ayon v. INS*, 206 F.3d 847, 849 (9th Cir. 2000). Under pre-IIRIRA law, namely old INA § 106, courts of appeals reviewed BIA decisions not to suspend deportation for abuse of discretion. *See, e.g., Ordonez v. INS*, 137 F.3d 1120 (9th Cir.1998). However, IIRIRA § 309(c)(4)(E) limited judicial review of the Attorney General's discretionary determination that an alien has failed to demonstrate "extreme hardship" under INA § 244. *Kalaw*, 133 F.3d at 1152. Specifically, § 309(c)(4)(E) provides that "there shall be no appeal of any discretionary decision under ... § 244." In *Kalaw*, 133 F.3d at 1150–51, we assessed the degree to which § 309(c)(4)(E) restricted judicial review in suspension of deportation cases. *Kalaw* held that certain elements of the § 244 analysis-namely, the continuous residence requirement and determination of which aliens are per se considered not to have good moral character under 8 U.S.C. § 1101(f)-do not involve the exercise of discretion. As to those decisions, which involve the application of law to facts, the court retains jurisdiction for direct review. *Kalaw*, 133 F.3d at 1150–51. However, the third element of the analysis, "extreme hardship," is " 'by the express terms of the statute a discretionary determination.' " *Id.* at 1152 (*quoting Carnalla–Munoz v. INS*, 627 F.2d 1004, 1006 (9th Cir.1980)). Thus, we are no longer empowered to conduct an "abuse of discretion" review of the agency's purely discretionary determinations as to whether "extreme hardship" exists. *Id.* at 1151–52.

Torres–Aguilar attempts to circumvent the line drawn in *Kalaw* between discretionary and factual determinations by arguing that the BIA "failed to exercise discretion as required by law." He contends that misapplication of case law is a legal error unrelated to an exercise of discretion. Any such distinction is illusory. Essentially, Torres–Aguilar claims that the BIA abused its discretion in determining the existence of "extreme hardship," which is the archetypal claim that § 309(c)(4)(E) removes from our jurisdiction.

## IV

Torres–Aguilar also contends that his due process rights were violated. The Fifth Amendment guarantees due process in deportation proceedings. *Campos–Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir.1999); *Cuadras v. INS*, 910 F.2d 567, 573 (9th Cir.1990). Among other protections, the right to due process encompasses a right to a full and fair hearing, *Getachew v. INS*, 25 F.3d 841, 845 (9th Cir. 1994), *Yamataya v. Fisher*, 189 U.S. 86, 101, 23 S.Ct. 611, 47 L.Ed. 721 (1903); the right to an impartial adjudicator, *Castro–Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir.2001); and the evaluation of each case on its own merits, *Larita–Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir.2000). The Fifth Amendment also protects aliens from "invidious discrimination" by the federal government. *Plyler v. Doe*, 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). A decision by the BIA or immigration judge violates due process "if the proceeding was 'so fundamentally unfair that the alien was prevented from reasonably presenting his case.' " *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir.2000) (quoting *Platero–Cortez v. INS*, 804 F.2d 1127, 1132 (9th Cir.1986)). Because a decision by the BIA or an immigration judge that denies due process is not one that involves the exercise of discretion, the prohibition against judicial review in the transitional rules does not apply to a petitioner's claim that the procedures employed in deportation proceedings deprived him of due pro-

cess. *Larita–Martinez*, 220 F.3d at 1095. Thus, we are not jurisdictionally precluded by § 309(c)(4)(E) from considering constitutional claims in connection with the denial of a request for deportation suspension based on extreme hardship. *Antonio-Cruz v. INS*, 147 F.3d 1129, 1130 (9th Cir.1998).

■ We review such constitutional claims de novo. *Colmenar*, 210 F.3d at 971. Where, as here, the BIA conducts a de novo review of the immigration judge's decision, we review the BIA's decision and not that of the immigration judge. *Cordon–Garcia v. INS*, 204 F.3d 985, 991 (9th Cir.2000).

■ Although we retain jurisdiction to review due process challenges, a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb. To hold otherwise would allow all immigrants subject to the transitional rules to circumvent clear congressional intent to eliminate judicial review over discretionary decisions through the facile device of re-characterizing an alleged abuse of discretion as a "due process" violation. Thus, to invoke our jurisdiction, a petitioner must allege at least a colorable constitutional violation. To be colorable in this context, the alleged violation need not be "substantial," *cf. Flores–Miramontes v. INS*, 212 F.3d 1133, 1135 n. 3 (9th Cir.2000), but the claim "must have some possible validity." *cf. U.S. v. Sarkisian*, 197 F.3d 966, 983 (9th Cir.1999)(citing *Richardson v. United States*, 468 U.S. 317, 326, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984)). In this context, that means that the petition must allege or the record must contain at least a colorable claim of a due process violation. *See Mendes v. INS*, 197 F.3d 6, 12 (1st Cir.1999); *Cf. Marrero v. INS*, 990 F.2d 772, 777 (3d Cir.1993).

To determine whether we have jurisdiction over claims labeled as due process violations, we must look beyond the label. In this case, Torres–Aguilar has not alleged a colorable due process claim. He does not contend that he was prevented from presenting his case before the immigration judge or the BIA, denied a full and fair hearing before an impartial adjudicator or otherwise denied a basic due process right. Rather, he urges that the BIA erred in its finding that he did not meet the requirement of "extreme hardship." Such an assertion is nothing more than an argument that the Board abused its discretion, a matter over which we have no jurisdiction. In short, Torres–Aguilar attempts to convert what, under § 106, would have been a non-constitutional appeal on the merits into a due process claim in order to circumvent the restrictions of judicial review imposed by § 309(c)(4)(E). The transitional rules divest us of jurisdiction over such allegations; therefore, we must dismiss his petition.

## V

In summary, IIRIRA's transitional rule provision, § 309(c)(4)(E), removes our jurisdiction to review the Attorney General's discretionary determination of whether an alien has demonstrated "extreme hardship" under § 244. We retain jurisdiction to review colorable claims of due process violations despite the restrictions of § 309(c)(4)(E). Traditional "abuse of discretion" challenges recast as alleged due process violations do not constitute colorable constitutional claims which would invoke our jurisdiction. Therefore, we dismiss the petition for want of jurisdiction.

**PETITION DISMISSED.**