**MI AH KIM, et al.**

v.

**UNITED STATES of America, et al.**

**Civil Action No. WMN–08–2450.**

United States District Court,
D. Maryland.

April 2, 2009.

Michael Wayne Lin, Braverman and Lin PC, Arlington, VA, Jason Jin Huh, Jong–Joon Chun, Chun and Associates LLC, Alexandria, VA, for Plaintiffs.

Cara M. Sims, William Charles Silvis, U.S. Department of Justice, Washington, DC, for Defendants.

### *MEMORANDUM*

WILLIAM M. NICKERSON, District Judge.

Presently pending before this Court is a motion to dismiss filed by Defendants United States of America, Michael Chertoff, Secretary of the United States Department of Homeland Security, Emilio Gonzalez, former Director of United States Citizenship and Immigration Services (USCIS), Richard Caterisana, District Director of the Baltimore District Office, USCIS, and John Doe, an immigration officer in the Baltimore District Office, USCIS. Paper No. 13. The motion is fully briefed. Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be granted.

### *I. BACKGROUND*

Plaintiff Seug IL Kim ("Mr. Kim") is a legal permanent resident of the United States who is married to Plaintiff Mi Ah Kim ("Mrs. Kim"), a naturalized citizen of the United States. Until May 17, 2007, however, Mr. Kim was an inadmissible alien subject to removal from the United States. This case arises out of the chain of events that led to immigration officials granting a discretionary waiver of Mr. Kim's inadmissibility.

On September 27, 2003, Mrs. Kim filed a Form I–130 Petition for Alien Relative, on behalf of Mr. Kim, seeking to classify him as a spouse of a citizen of the United States. If granted, the Form I–130 Peti-

tion would have given Mr. Kim a preference on the Form I–485, Adjustment of Status application, which Mr. Kim also filed on September 27, 2003.

On March 4, 2004, an agent of the Baltimore office of USCIS, whom Plaintiffs have identified in the Complaint as "John Doe," interviewed Plaintiffs on both the Form I–130 Petition and the Form I–485 application. Plaintiffs allege that during this interview, John Doe treated them with great hostility and refused to consider evidence of their marriage.

On March 19, 2004, USCIS sent letters to Plaintiffs informing them of the agency's intent to deny both the Form I–130 Petition and the Form I–485 application. The intent to deny letter stated that because of a prior material misrepresentation on his visa application, Mr. Kim was ineligible to adjust his immigration status.[1] The intent to deny letter also informed Mr. Kim that if he filed a Form I–601 Application for Waiver of Grounds of Excludability, and he established that the refusal of admission to the United States would result in an extreme hardship to Mrs. Kim, his inadmissibility could be waived, at the discretion of the agency.

USCIS sent a similar letter to Mrs. Kim, informing her that it intended to deny the Form I–130 Petition she filed on behalf of her husband. The letter indicated that the Kims "entered into a 'sham' marriage in a blatant attempt to circum-vent the immigration laws."[2] In the letter, USCIS noted that it intended to deny the petition, but that Mrs. Kim could rebut any derogatory information in the letter and submit additional information supporting the petition, provided such rebuttal or evidence was submitted within 30 days.

On June 22, 2004, USCIS sent a letter to Mrs. Kim stating that she had failed to meet her burden of establishing entitlement to the immigration benefit she sought and that her Form I–130 Petition was denied. USCIS also sent a letter, dated June 22, 2004, to Mr. Kim informing him that the service was denying Mr. Kim's Form I–485 application and thus, refusing to allow him to adjust his alien status to that of legal permanent resident.

On July 6, 2004, Mr. Kim filed an I–601 waiver application, as well as a Motion to Re-open the denial of the Form I–130. According to Plaintiffs, the waiver application and supporting affidavit outlined the extreme hardship which Mrs. Kim and her three young children would suffer if Mr. Kim could not remain in the United States with his family.

On November 22, 2004, USCIS denied Mr. Kim's I–601 waiver application. In its decision, USCIS acknowledged that although the family would likely suffer hardship, Mr. Kim failed to meet his burden of showing that his United States citizen spouse would suffer *extreme hardship* if he were returned to Korea.[3]

---

**1.** Mr. Kim's inadmissibility was based upon his false assertion on his visa application that he was employed by Hyundai Merchant Marine Co., LTD. In fact, Mr. Kim was not employed by the company. Under 8 U.S.C. § 1182(a)(6)(C)(i), "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." Plaintiffs do not contest that Mr. Kim made this misrepresentation and that this misrepresentation is the reason USCIS denied his I–485 application.

**2.** Plaintiffs allege that this letter mischaracterized the evidence that they submitted to John Doe during the March 4, 2004, interview.

**3.** On the same day, however, USCIS reconsidered Mrs. Kim's I–130 Petition and reversed its initial denial of the Petition. In its decision, USCIS stated that, based on the additional evidence that Plaintiffs had entered into

On December 15, 2004, Mrs. Kim filed a motion with USCIS to reconsider the denial of the I–601 waiver application. USCIS denied this motion because only the applicant—Mr. Kim—could file this motion. Thus, on December 29, 2004, Mr. Kim filed his own motion to reconsider the denial of his waiver application.

USCIS again denied the motion to reconsider the I–601 waiver application on January 6, 2006, stating that Mr. Kim had "failed to demonstrate that the refusal of your admission would result in 'extreme hardship' to your U.S. citizen spouse and your U.S. citizen son." In particular, the decision stated that, based upon prior decisions of the Board of Immigration Appeals (BIA), common results of family separation, as would result from Mr. Kim's removal, including financial and emotional hardships, "are insufficient to warrant approval of an application unless combined with much more extreme impacts.... Service records fail to reveal evidence of such an extreme impact." [4] Compl., Ex. H.

On February 3, 2006, Mr. Kim filed another Motion to Reconsider his I–601 Waiver of Inadmissibility. Plaintiffs allege that this motion did not provide any new information, "except to remind USCIS that previous warnings about the extreme hardship that Mrs. Kim would suffer did, in fact, happen and informed USCIS of the

tragic loss of a child." [5] This application was approved on May 17, 2007, and on April 8, 2008, an immigration judge approved Mr. Kim's I–485 petition and Mr. Kim became a lawful permanent resident of the United States.

After receiving the full relief requested, Plaintiffs filed this claim in which they assert fourteen counts against all Defendants including: Counts I and II–Federal Tort Claims Act (FTCA) claims arising from alleged due process violations; Counts III and IV—FTCA claims arising from Defendants' willful misconduct; Counts V and VI—FTCA claims arising from Defendants' gross negligence; Counts VII and VIII—FTCA claims arising from Defendants' negligence; Counts IX and X—FTCA claims arising from Defendants' intentional infliction of emotional distress; Counts XI and XII—FTCA claims arising from Defendants' negligent infliction of emotional distress; and Counts XIII and XIV—*Bivens*[6] claims arising from Defendants' due process violations.

On January 12, 2009, Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

## II. STANDARDS OF LAW

Where subject matter jurisdiction is challenged under Rule 12(b)(1), the plain-

---

a bona fide marriage, including a copy of their daughter's birth certificate, statements of their joint bank accounts and joint credit card accounts, photographs of their family, and supporting affidavits, the "grounds originally stated in the denial have been overcome."

4. In one paragraph, the Decision states that the bar to Mr. Kim's admission (Mr. Kim's misrepresentation on his visa application) could only be removed if he showed *"great actual or prospective injury* to *the United States nation."* Compl., Ex. H. (emphasis in original). It added, "you have neglected to establish such great actual or prospective in-

jury." *Id.* Plaintiffs allege that this statement indicates a misapplication of the law. As explained *infra*, even if this were a misapplication of the law, Plaintiffs claims would still fail. It should be noted, however, that the correct standard—extreme hardship to the *United States citizen spouse*—is noted multiple times throughout the Decision.

5. Mrs. Kim suffered a miscarriage in January 2006.

6. These claims arise under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

tiff bears the burden of persuasion to show that jurisdiction exists. *Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995). Where, as here, the challenge is made, not to the sufficiency of the jurisdictional allegations, but to the underlying facts supporting those allegations, "[a] trial court may [ ] go beyond the allegations of the complaint" and "may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). "Indeed, 'the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Williams,* 50 F.3d at 304 (quoting *Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)).

To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations" are not required, but a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief'" and this "requires more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action[.]" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (internal citations omitted). In considering such a motion, the court is required to accept as true all well-pled allegations in the complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir.1997). A plaintiff must have alleged facts "to raise a right to relief above the speculative level[.]" *Twombly,* 127 S.Ct. at 1965. "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969.

## III. DISCUSSION

Plaintiffs'. claims are based almost entirely upon injuries allegedly suffered due to USCIS' initial denial of Mr. Kim's I–601 waiver application.[7] Such a waiver is governed by 8 U.S.C. § 1182(i) which vests the Attorney General with the discretion to waive the inadmissibility of an immigrant alien "if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such an alien . . . ." The statute also states that any decision regarding such a waiver is not subject to judicial review. 8 U.S.C. § 1182(i)(2). Finally, a separate provision, 8 U.S.C. § 1252(a)(2)(B)(ii), bars judicial review of the Attorney General's decisions granting or denying discretionary relief, including waivers under § 1182(i).[8] Thus, the main thrust of Defendants' motion to dismiss argues that this Court lacks jurisdiction to review any of USCIS's actions or

---

7. *See infra* footnote 9.

8. The exact language of the statute states, in pertinent part:

(B) Denials of discretionary relief
Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

decisions relating to Mr. Kim's discretionary I–601 waiver application.

■ Under Fourth Circuit case law, it is clear that this Court does not have jurisdiction to review claims of "abuse of discretion." *See Okpa v. INS*, 266 F.3d 313, 318 (4th Cir.2001) (finding no jurisdiction to review plaintiff's claim that the BIA abused its discretion in concluding that plaintiff's wife would not endure extreme hardship if plaintiff were deported). This case, however, presents a slightly different question—whether § 1182(i)(2) acts as a bar to tort claims arising from a decision or action of the Attorney General in the context of an I–601 waiver. Although the Fourth Circuit has not addressed this specific question, several other courts have interpreted provisions similar to § 1182(i) under the Immigration and Nationality Act and have held that the statutes bar *Bivens* claims arising from similar Attorney General decisions and actions. For example, in *Sissoko v. Rocha*, an alien brought a *Bivens* claim against an immigration official alleging that he was wrongfully taken into custody in violation of his Fourth Amendment rights. 509 F.3d 947, 948 (9th Cir.2007). On appeal, the Ninth Circuit held that the court lacked subject matter jurisdiction under 8 U.S.C. § 1252(g), which states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings." *Id.* at 949. The court held that the alien's detention arose from the immigration official's decision to commence expedited removal proceedings and thus, § 1252(g) barred the claim. *Id.*; *see also Van Dinh v. Reno*, 197 F.3d 427, 432–35 (10th Cir.1999) (dismissing *Bivens* class action suit regarding the Government's decision to transfer aliens between detention facilities under § 1252(a)(2)(B)(ii)).

In their opposition, Plaintiffs attempt to avoid any bar to judicial review by arguing that what they are challenging is not the discretionary decision of the Attorney General to grant or deny the waiver itself, but whether the Attorney General applied the proper standard when he initially denied the waiver. Opp'n at 6–8. This argument fails for two reasons. First, the only "standard" that Plaintiffs point to is the language of the statute itself. *See* Opp'n at 6 ("[T]he regulation prescribes a specific standard that the Attorney General must apply when deciding whether or not to grant an application for waiver; namely, that the Attorney General must consider the 'extreme hardship to the citizen or lawfully resident spouse or parent of such alien.' 8 U.S.C. § 1182(i)(1)."). Thus, it is clear to this Court that any distinction Plaintiffs attempt to make between their claims and a claim challenging the discretionary decision of the Attorney General is illusory. *See Torres–Aguilar v. Immigration and Naturalization Service*, 246 F.3d 1267, 1270 (9th Cir.2001) (rejecting petitioner's attempt to recast his abuse of discretion claim and finding BIA's determination of whether he had shown extreme hardship was by the "express terms of the statute" a discretionary determination over which court did not have jurisdiction).

Moreover, the provision barring judicial review of waivers under § 1182(i) does not differentiate between different types of claims challenging a decision or action of the Attorney General relating to the waiver. Accordingly, the statute, by its plain language, applies to *all* such claims regardless of whether the claim is construed as an attack on the Attorney General's discretion or as a challenge to the Attorney General's application of the proper legal standard.

■ Plaintiffs also attempt to bypass the bar on this Court's jurisdiction by cit-

ing to several cases in which courts held that immigration proceedings must conform to the general requirements of due process. While it is certainly true that courts retain jurisdiction to review due process challenges, these cases also make it clear that "a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." *Torres–Aguilar*, 246 F.3d at 1271. In *Torres–Aguilar*, the petitioner argued that the immigration judge's determination of what constituted extreme hardship for purposes of his request for suspension of deportation violated his right to due process. *Id.* at 1269–71. In finding that the petitioner had no colorable due process claim, the court stated

> He does not contend that he was prevented from presenting his case before the immigration judge or the BIA, denied a full and fair hearing before an impartial adjudicator or otherwise denied a basic due process right. Rather, he urges that the BIA erred in its finding that he did not meet the requirement of "extreme hardship." Such an assertion is nothing more than an argument that the Board abused its discretion, a matter over which we have no jurisdiction.

*Id.* at 1271. Like the *Torres–Aguilar* court, this Court finds that Plaintiffs' claims are based on the discretionary actions of the USCIS and thus this Court lacks jurisdiction to hear these claims under both § 1182(i) and § 1252(a)(2)(B)(ii).[9]

■ Even if this Court had jurisdiction over Plaintiffs' claims, there are a myriad of other reasons why the Court must grant Defendants' motion to dismiss. First, Plaintiffs' tort claims, Counts I–XII, are barred by the discretionary function exception of the FTCA, 28 U.S.C. § 2680(a). Section 2680 of the FTCA provides for various exceptions to the Act. If any of these exceptions apply, the Court must dismiss the FTCA claim because "the United States is immune from suit without the consent of Congress." *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001) (internal quotations omitted). The relevant exception here states that the United States has not consented to liability for "any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Accordingly, Plaintiffs cannot base their FTCA claims on the actions of Defendants if the challenged actions are discretionary functions or duties, even if Defendants abused their discretion in the performance of those functions or duties.

■ In *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the Supreme Court developed a

---

**9.** In addition to injuries allegedly suffered due to USCIS' initial denial of Mr. Kim's I–601 waiver application, Plaintiffs seem to allege one other source of injury—the March 2004 interview when "John Doe refused to accept evidence submitted by Plaintiffs to prove their marriage and in which Defendant John Doe intimidated and harassed Plaintiffs throughout the interview." Compl. at ¶¶ 86, 89, 134, and 137. These claims are only made in relation to Counts I, II, XIII and XIV and can be dismissed for reasons outside of the statutory jurisdictional bar related to abuse of discretion reviews. Counts I and II are FTCA claims based on violations of due process which must be dismissed for lack of subject matter jurisdiction because the FTCA does not provide a cause of action for constitutional torts, *see FDIC v. Meyer*, 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.").

Counts XIII and XIV are *Bivens* claims and must be dismissed for the reasons discussed *infra* at 17–19.

two-part test for determining whether the discretionary function exception applies. First, the challenged conduct must be the product of judgment or choice, *i.e.*, "the exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* at 536, 108 S.Ct. 1954. Second, the challenged conduct must be "based on considerations of public policy." *Id.* at 537, 108 S.Ct. 1954.

The Fourth Circuit recently analyzed the discretionary function exception in the context of immigration actions in *Medina*. Medina was a Venezuelan diplomat with a conviction for simple assault and battery against his former fiancée. *Medina*, 259 F.3d at 222. After an investigation, Immigration and Naturalization Service (INS) agents determined that Medina had committed a crime of moral turpitude and arrested and detained him in order to begin deportation proceedings. *Id.* Eventually, the INS dismissed the deportation proceedings, agreeing with Medina that simple assault and battery was not a crime of moral turpitude. *Id.* at 223. After exhausting his administrative remedies, Medina then sued the INS agents under the FTCA. *Id.* Because Medina's conviction fell within the category of offenses that would have made him deportable if it qualified as a crime of moral turpitude, the court held that the agents' decision to initiate removal proceedings on that basis "was a quintessential exercise" of their "broad discretion." *Id.* at 227.

In this case, as in *Medina*, Defendants had broad discretion to exercise judgment at each stage of Mr. Kim's immigration proceedings. Under 8 U.S.C. § 1255(a), the status of an alien who was inspected and admitted or paroled into the United States ... may be adjusted by the Attorney General, *in his discretion* and

under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

(emphasis added). It is undisputed that at the time of Plaintiffs' initial interview with Defendant John Doe on March 4, 2004, Mr. Kim was ineligible to adjust status because he had illegally procured his visa by fraud, and was thus inadmissible under 8 U.S.C. § 1182(1)(6)(C)(i).[10] Accordingly, Mr. Kim needed to apply for a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(i). As discussed above, § 1182(i) grants immigration officials broad discretion to exercise judgment and choice in deciding whether an inadmissible alien has demonstrated that they qualify for a waiver.

■ The second prong of the discretionary function exception test requires that the challenged conduct be "based on considerations of public policy." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. 1954. "[W]hen a statute, regulation, or agency guideline permits a government agent to exercise discretion, 'it must be presumed that the agent's actions are grounded in policy when exercising that discretion.'" *Suter v. United States*, 441 F.3d 306, 311 (4th Cir.2006) (quoting *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335, (1991)).

Because USCIS has discretion to decide whether to award waivers of inadmissibility under § 1182(i) for extreme hardship, it must be presumed that the granting of such waivers is grounded in consideration

10. *See supra* footnote 1.

of public policy. Moreover, the fact that Congress specifically foreclosed judicial review of these waiver determinations is strong evidence that it did not intend for these determinations to be the basis for a lawsuit in federal court. Accordingly, Plaintiffs' FTCA claims must fail because sovereign immunity bars these claims.

■■■■ Finally, Plaintiffs' *Bivens* claims arising out of Defendants' due process violations, Counts XIII and XIV, also fail because Plaintiffs have not identified a constitutionally protected liberty interest. To establish a violation of due process, "a claimant must first establish that he had a property or liberty interest at stake." *Dekoladenu v. Gonzales*, 459 F.3d 500, 508 (4th Cir.2006) (internal quotations omitted). "No property or liberty interest can exist when the relief sought is discretionary." *Id.* (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464–67, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981)); *see also Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir.2002) ("On many occasions this circuit has held that discretionary statutory 'rights' do not create liberty or property interests protected by the Due Process Clause.").

In their Opposition, Plaintiffs cite to a Ninth Circuit case to find support for their *Bivens* due process claims—*Sanchez-Cruz v. INS*, 255 F.3d 775 (9th Cir.2001). In this case, an immigration judge found Sanchez–Cruz deportable and denied her request for suspension of deportation, finding that she had failed to make the requisite showing that her deportation would cause her or her children extreme hardship. *Id.* at 778. The Ninth Circuit found that it lacked jurisdiction to review the discretionary determination whether an alien seeking suspension of deportation has met the statutory eligibility requirement of extreme hardship. *Id.* The court, however, found that it retained jurisdiction to review a due process challenge to the BIA's denial of suspension of deportation, stating that the Fifth Amendment guarantees due process in deportation proceedings. *Id.* at 779. Thus, were this Court in the Ninth Circuit, Plaintiffs *Bivens* claims might survive. The Fourth Circuit, however, does not make this distinction and the cases are clear that where the decision is discretionary, "there is no entitlement to a benefit to constitute a protected right," and thus "there can be no due process violation." *Peter v. Gonzales*, 210 Fed.Appx. 303, 308 (4th Cir.2006). Because Plaintiffs allegations revolve around a discretionary right, their *Bivens* claims must be dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss will be granted. A separate order will issue.

### ORDER

In accordance with the foregoing Memorandum and for the reasons stated therein, IT IS this 2nd day of April, 2009, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That the motion to dismiss filed by Defendants United States of America, Michael Chertoff, Emilio Gonzalez, Richard Caterisana, and John Doe, an immigration officer in the Baltimore District Office, United States Citizenship and Immigration Services, Paper No. 13, is GRANTED;

2. That this action is hereby closed; and

3. That the Clerk of the Court shall transmit copies of the accompanying Memorandum and this Order to all counsel of record.