**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 10, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————————

SEMI HAFOKA, a/k/a Ofa He Lotu
Vainuku,

     Petitioner,

v.

JEFFERSON B. SESSIONS, III, United
States Attorney General,

     Respondent.

No. 16-9559
(Petition for Review)

————————————————————

**ORDER AND JUDGMENT**[*]
————————————————————

Before **PHILLIPS**, **KELLY**, and **McHUGH**, Circuit Judges.
————————————————————

   Semi Hafoka petitions this court to review the Board of Immigration Appeals'

(the Board's) order removing him to Tonga, his native country, and reversing an

immigration judge's decision to grant his application for cancellation of removal.

With at least six convictions for crimes involving moral turpitude on his record,

Hafoka admits that he's deportable under 8 U.S.C. § 1227(a)(2)(A)(ii), but asserts

that he's still entitled to cancellation of removal under § 1229b(a)—as the

immigration judge found. In concluding otherwise, argues Hafoka, the Board

exceeded the bounds of its appellate role and deprived him of his right to due

———————————

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

process. He urges us to intervene. But the power to grant discretionary relief, such as cancellation of removal, lies with the Attorney General. Absent some exception, we lack jurisdiction to review his decisions. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Here, no exception applies, so we dismiss Hafoka's petition for lack of jurisdiction.[1]

## BACKGROUND

Since immigrating to the United States in 1988 on an agricultural-worker visa, and then becoming a lawful permanent resident in 1993, Hafoka has had "at least 21 separate encounters with law enforcement" in the Salt Lake City area. R. at 108. As these encounters piled up, Hafoka developed the unfortunate habit of lying to the police about his name, sometimes offering his wife's or brother-in-law's in lieu of his own. By 2015, he'd thus accrued six state-court convictions for giving false information to a peace officer (or some variation thereon), plus seven convictions for driving under the influence. In addition, he had been arrested (but not convicted) for possessing drug paraphernalia, had been convicted of attempted theft, and had committed several traffic infractions, including driving without a license, without insurance, or without registration, and speeding. As punishment, the courts often sentenced him to probation, with a suspended jail term. But Hafoka seldom complied with probationary terms—he would fail to pay fines, or disregard a court order to enroll in an alcohol-treatment program, or drive drunk (again)—and land in jail for a short stint.

---

[1] We have inherent jurisdiction to assess our own jurisdiction. *Latu v. Ashcroft*, 375 F.3d 1012, 1017 (10th Cir. 2004) (quoting *Kuhali v. Reno*, 266 F.3d 93, 100 (2d Cir. 2001)).

Then on August 1, 2015, the Department of Homeland Security (the Department) got involved, serving Hafoka with a Notice to Appear, and ordering him detained. The Notice alleged that Hafoka was "subject to removal from the United States" under 8 U.S.C. § 1227(a)(2)(A)(ii), which states, "Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, . . . is deportable." R. at 505. In support of that charge, the Notice cited Hafoka's six convictions for violating Utah Code Ann. §§ 76-8-507 ("[f]alse personal information to [a] peace officer") and -506 ("[p]roviding false information to law enforcement officers").[2]

A month later, on September 2, 2015, Hafoka appeared before an immigration judge. Through counsel, he admitted the allegations in the Notice and conceded his removability. The judge sustained the charge, and Hafoka then sought relief through cancellation of removal. *See* 8 U.S.C. § 1229b(a) ("The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable . . . .").

Over the next three months, the presiding immigration judge held several days of hearings on Hafoka's application for relief from removal. Then, on November 30, 2015, the judge issued a written decision. After laying out the facts of the case, the judge determined that Hafoka met § 1229b(a)'s criteria for cancellation of removal:

---

[2] Hafoka pleaded guilty to his most recent false-information charge (plus charges of failing to obey a police officer, driving on a revoked license, and operating a vehicle without the required interlock system) on May 4, 2015. Just eleven days later, on May 15, police again arrested Hafoka on suspicion of driving under the influence—his eighth such charge. It remained pending throughout the proceedings before the immigration judge.

(1) he'd been a lawful permanent resident for at least five years, (2) he'd resided in the U.S. for at least seven continuous years since his admission in 1988, and (3) he'd never been convicted of an aggravated felony. The determinative issue, therefore, was whether Hafoka could prove that he deserved a favorable exercise of discretion. To resolve that issue, the judge had to balance the positive factors in Hafoka's life, such as his family ties, against negative factors, such as his criminal record. In the judge's view, Hafoka had "demonstrated . . . an abundance of both." R. at 109.

"On the one hand," the judge noted Hafoka's "extensive criminal history," which "spann[ed] 25 years" and featured at least twenty-one police encounters and seven drunk-driving arrests, including a pending charge incurred just months before the immigration proceedings began. *Id.* at 109. This history, the judge found, demonstrated Hafoka's "disregard for the laws of the United States" and an "apparent lack of rehabilitation." *Id.* Hafoka's recidivist drunk driving, in particular, indicated that he didn't grasp "what the true consequences of his actions might be—that an innocent victim might be seriously injured or killed." *Id.*

But on the other, positive-factor hand, Hafoka had lived in the United States for decades—"at least half of his life"—along with many members of his large, close-knit family, all of them U.S. citizens or lawful permanent residents. *Id.* As the judge observed, "numerous family members" had attended Hafoka's hearing, and they "obviously care[d] for [him] very much." *Id.* at 106, 109. Hafoka's oldest brother, a U.S. citizen who owned the family's landscaping business and employed Hafoka, testified on his behalf, as did the brother's wife. According to their

4

testimony, Hafoka's family members would do "everything they c[ould] as a family to provide support to [Hafoka] so that he w[ould] be law-abiding in the future; get the help he needs regarding his drinking alcohol; and not drive without a valid license." *Id.* at 109. Lastly, the judge cited a letter from the president of a Polynesian community organization (an organization that Hafoka himself had once led) in which the president promised to take responsibility for Hafoka and to "ensure that [he] beg[an] to take the necessary steps toward becoming a positive, contributing member of society." *Id.* at 108.

After summarizing these positive and negative factors, the judge observed that the balance posed "a close question given the persistent and lengthy nature of [Hafoka's] offenses." *Id.* at 109. But based on Hafoka's "extensive family ties, his community ties, and [his] employment history," the judge concluded that Hafoka deserved a favorable exercise of discretion. *Id.* She granted his application for cancellation of removal.

The Department appealed the immigration judge's decision and, on October 27, 2016, the Board entered a written order sustaining the appeal. Although the Board agreed that Hafoka met the statutory criteria for cancellation of removal, it disagreed that the balance of positive and negative factors merited a favorable exercise of discretion. In the Board's view, Hafoka's "lengthy criminal history" and pending drunk-driving charge reflected "a pattern of serious criminal conduct without significant evidence of rehabilitation." *Id.* at 3. Positives, such as Hafoka's family ties, community ties, and work history, couldn't offset these "significant negative

5

factors." *Id.* Hafoka's pattern of assuming his family members' identities "without regard for the negative impact it would have on those persons" subtracted from the positive effect of his family ties. *Id.* at 4. And although many family members lived nearby, they had given "little supporting testimony" during the hearing—Hafoka's wife hadn't even attended. *Id.* Finally, the record showed "little objective evidence" of Hafoka's "claimed" community ties and employment history. *Id.* Thus, despite conceding, as the immigration judge had, that the facts presented "a close case," the Board concluded that Hafoka hadn't submitted enough evidence to establish that he deserved a favorable exercise of discretion. *Id.* It ordered him removed to Tonga.

Hafoka then petitioned this court to review the Board's removal order.

## DISCUSSION

Hafoka asks this court to reverse the removal order, asserting that it contains two errors. First, he claims that the Board applied the wrong standard of review when it reversed the immigration judge's decision to grant him cancellation of removal. Second, Hafoka argues that the Board violated his due-process rights by disregarding credible testimony and "erroneous[ly] heightening" his burden of proof. Pet'r's Opening Br. at 29. In response, the government urges us to dismiss Hafoka's petition for lack of jurisdiction, an issue that we must address—and favorably resolve—before we may reach the merits. *Sabido-Valdivia v. Gonzales*, 423 F.3d 1144, 1147 (10th Cir. 2005).

So we begin our analysis by describing the judicial-review scheme that Congress crafted for immigration cases, focusing on our statutory power to review

6

petitions that, like Hafoka's, challenge the denial of discretionary relief from removal. We can then assess our jurisdiction to reach the merits of Hafoka's claims. As it is for all jurisdictional questions, our review is de novo. *Huerta v. Gonzales*, 443 F.3d 753, 755 (10th Cir. 2006).

## A. Judicial Review of Removal Orders

The Immigration and Nationality Act (INA) both creates and cabins our jurisdiction to review removal orders. *See* 8 U.S.C. § 1252; *see also Herrera-Castillo v. Holder*, 573 F.3d 1004, 1010 (10th Cir. 2009). It makes a petition filed with an appropriate court of appeals "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). But from this grant of jurisdiction the INA carves out some matters—such as "[d]enials of discretionary relief"—that are "not subject to judicial review." *Id.* § 1252(a)(2). The denial of cancellation of removal under § 1229b, a form of discretionary relief, thus falls outside our jurisdiction. Section 1252(a)(2)(B)(i) specifically directs that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b." 8 U.S.C. § 1252.

But § 1252(a)(2) doesn't necessarily strip us of jurisdiction to entertain this appeal, because it explicitly restores judicial review of "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D).[3] The Tenth Circuit takes a "restrictive view" of this jurisdictional safe-harbor, limiting it to colorable claims and

---

[3] Section 1252(a)(2)(D)'s grant of jurisdiction codifies the REAL ID Act of 2005. *Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006).

interpreting "questions of law" to mean issues of statutory construction. *Shepherd v. Holder*, 678 F.3d 1171, 1180 (10th Cir. 2012); *Alzainati v. Holder*, 568 F.3d 844, 850–51 (10th Cir. 2009). It's the substance of the claim that matters here. "[A] petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an . . . argument in constitutional garb." *Mehilli v. Gonzales*, 433 F.3d 86, 93 (1st Cir. 2005) (alteration in original) (quoting *Torres-Aguilar v. Immigration & Naturalization Serv.*, 246 F.3d 1267, 1271 (9th Cir. 2001)). Even when couched in terms of legal error or constitutional deficit, challenges to discretionary and factual determinations—claims that "evidence was incorrectly weighed, insufficiently considered, or support[ed] a different outcome"—don't support judicial review under § 1252(a)(2)(D). *Kechkar v. Gonzales*, 500 F.3d 1080, 1084 (10th Cir. 2007).

## B. Hafoka's Petition for Review of the Board's Removal Order

Applying these principles here, the question becomes: has Hafoka raised a reviewable constitutional claim or question of law, or has he dressed in constitutional or statutory-construction garb an unreviewable challenge to the Board's exercise of discretion? We answer that question for each of two issues in his petition.

### 1. Whether the Board Applied the Wrong Standard of Review to the Immigration Judge's Fact Findings

First, Hafoka claims that the Board applied a de novo standard of review to the immigration judge's fact findings, in contravention of an agency regulation mandating deference. *See* 8 C.F.R. § 1003.1(d)(3)(i)–(ii) (requiring clear-error review of immigration judges' factual determinations, but allowing the Board to review de

8

novo "questions of law, discretion, and judgment and all other issues in appeals from" the judges' decisions). This error, Hafoka asserts, led to a decision in which the Board failed (1) to "respect[] the Immigration Judge's findings concerning witness credibility," (2) to "credit[] the Immigration Judge's conclusion that [he] met his burden of proof," and (3) to "grant his application for relief." Pet'r's Opening Br. at 29. He argues that the Board's error presents a "question of law" that we have jurisdiction to decide. *Id.*

Our jurisdiction to decide questions of law under § 1252(a)(2)(D), however, reaches only a "narrow category of issues regarding statutory construction." *Diallo v. Gonzales*, 447 F.3d 1274, 1282 (10th Cir. 2006) (quoting *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 153 (2d Cir. 2006)); *accord Chen*, 434 F.3d at 152–53 (discussing § 1252(a)(2)(D)'s legislative history and why it supports this narrow interpretation of "questions of law"). Yet here, we discern no issues that fit in this category.

"What's the proper standard of review?" might qualify, but it's not in dispute here. Regulations[4] clearly state (and no one contests) that the Board must defer to the immigration judge's fact findings unless those findings are clearly erroneous. *See* 8

---

[4] Regulatory interpretation likely warrants the same treatment as statutory interpretation. *See Chen*, 471 F.3d at 153 (suggesting that, because regulatory-interpretation questions are historically reviewable on habeas corpus review, they present "questions of law"); *Ramadan v. Gonzales*, 479 F.3d 646, 650, 654 n.8 (9th Cir. 2007) (concluding that the phrase "questions of law" includes "the application of statutes and regulations"). That question hasn't been squarely presented to us, though, and we need not decide it here. We merely assume, without deciding, that § 1252(a)(2)(D)'s "questions of law" provision permits judicial review of regulatory-interpretation issues.

C.F.R. § 1003.1(d)(3)(i). The Board cited and applied § 1003.1(d)(3) in its decision, so were we (hypothetically) to "hold" that clear-error review applies, that holding would have no effect on remand.

Nor is the Board's application of the clear-error standard properly at issue. Consider, again, how a hypothetical remand might play out. The Board has already acknowledged, as the immigration judge did, that Hafoka's long criminal history and pending charge, juxtaposed with his family ties, "present a close case." R. at 4. In fact, the Board's original decision disturbed none of the immigration judge's findings of fact, limiting its review to whether, given those facts, Hafoka had proved "that he merits a favorable exercise of discretion." *Id.* at 3. Questions of discretion, under § 1003.1(d)(3)(ii), warrant de novo review, so the Board didn't need to address the scope of its authority to upend the immigration judge's fact findings and to engage in its own. De novo review allowed the Board to answer the discretionary question differently than did the immigration judge—to reach the inherently value-laden conclusion that the negatives in Hafoka's life outweigh the positives. So were we to instruct the Board, on remand, to review the immigration judge's factual determinations only for clear error, that instruction would not affect the Board's reasons for denying Hafoka's application for cancellation of removal.

When we strip away the rhetoric here, what's left is a quarrel over the Board's exercise of discretion. But § 1252(a)(2)(B) insulates discretionary decisions from judicial review, and because Hafoka hasn't presented a "question[] of law" for which

10

§ 1252(a)(2)(D) would restore judicial review, we lack jurisdiction to address this issue any further.

### 2. Whether the Board Deprived Hafoka of Due Process

Next, Hafoka argues that in failing to consider credible testimony, the Board violated his constitutional right to due process and "erroneously heighten[ed]" his burden of proof. Pet'r's Opening Br. at 29. Specifically, Hafoka points to the Board's conclusion that he presented "little objective evidence" of his "claimed community ties and employment history" and argues, based on this statement, that the Board "essentially requir[ed] that he produce documentary evidence despite the fact that the testamentary evidence was found by the Immigration Judge to be credible." R. at 4; Pet'r's Opening Br. at 31–32.

But Hafoka, as a petitioner in immigration proceedings, has no protected liberty or property interest in discretionary relief, such as cancellation of removal. *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (citing *Dave v. Ashcroft*, 363 F.3d 649, 652–53 (7th Cir. 2004)). Aliens have no constitutional right to enter or remain in the United States, so the Due Process Clause guarantees them only "an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (internal quotation marks omitted) (quoting *de la Llana-Castellon v. Immigration & Naturalization Serv.*, 16 F.3d 1093, 1096 (10th Cir. 1994)). Beyond these minimal procedural protections, though, any allegedly protected interest must be grounded in statute or regulation. *Id.* (citing *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1292 (10th Cir. 2001)).

11

Even if Hafoka's burden-of-proof argument could implicate some protected interest, the cherry-picked sentence that he offers in support doesn't prove up a colorable claim. Read in context, that sentence means that Hafoka presented too little evidence of his community ties and employment history to offset, in the Board's opinion, the negative impact of his criminal record and pending charges. Nowhere did the Board mention documentary evidence or indicate disagreement with the immigration judge's credibility findings. And nothing in the Board's opinion suggests that it held Hafoka to a burden different than that set forth in 8 C.F.R. § 1240.8(d), which imposed on Hafoka "the burden of establishing" (1) that he was eligible for any requested relief, (2) that the relief should be granted in the exercise of discretion, *and*—"[i]f the evidence indicate[d] that one or more of the grounds for mandatory denial of the application for relief may apply"—then (3) that, by a preponderance of the evidence, those grounds didn't, in fact, apply. *Id.*[5]

In the end, this claim amounts to nothing more than an attempt to disguise, under constitutional rhetoric, unreviewable assertions that the Board incorrectly weighed the evidence, or insufficiently considered it, or reached the wrong outcome in light of it. *See Kechcar*, 500 F.3d at 1084. But Hafoka can't use rhetorical artifice to create jurisdiction that Congress expressly withdrew. *See Torres-Aguilar*, 246 F.3d at 1271. His due-process challenge to the Board's denial of discretionary relief

---

[5] As written, the regulation ties the preponderance standard only to the third element; it doesn't specify a standard for the first or second. So, despite Hafoka's suggestion that a preponderance standard is attached to each evidentiary burden, we find it hard to read § 1240.8(d) that way.

doesn't present a colorable constitutional claim, so § 1252(a)(2)(B) and (D) insulate it from judicial review, and we lack the power to address it any further.

## CONCLUSION

For these reasons, we dismiss Hafoka's appeal for lack of jurisdiction.

Entered for the Court


Gregory A. Phillips
Circuit Judge

13