PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RAFAEL MEDINA,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

No. 00-2156

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-99-1498-A)

Argued: April 4, 2001

Decided: July 27, 2001

Before WILKINS and KING, Circuit Judges, and
Frederic N. SMALKIN, United States District Judge
for the District of Maryland, sitting by designation.

Vacated and remanded with instructions by published opinion. Judge
King wrote the opinion, in which Judge Wilkins and Judge Smalkin
joined.

## COUNSEL

**ARGUED:** Edward Scott Rosenthal, ROSENTHAL, RICH &
COSTLE, L.L.P., Alexandria, Virginia, for Appellant. Lawrence
Joseph Leiser, Assistant United States Attorney, Alexandria, Virginia,
for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney,
Alexandria, Virginia, for Appellee.

**OPINION**

KING, Circuit Judge:

Rafael Medina was arrested by agents of the Immigration and Naturalization Service ("INS") and subjected to deportation proceedings, which the INS subsequently dismissed. After exhausting his administrative remedies under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), Medina brought suit in the Eastern District of Virginia on the theory that the INS agents involved had arrested him without probable cause, thereby committing various torts under Virginia law. The district court granted summary judgment to the Government, and Medina appeals. Because we conclude that the district court lacked subject matter jurisdiction in this case, we vacate the summary judgment and remand with instructions that Medina's complaint be dismissed.

I.

A.

Medina was a resident of Virginia and a Venezuelan diplomat assigned to the Embassy of Venezuela in Washington, D.C. In September 1996, Medina's former fiancee accused him of various crimes, and he was indicted in Virginia for attempted rape, sexual battery, burglary, petit larceny, and simple assault and battery. Over Medina's objections, Venezuela refused to waive his diplomatic immunity and instead recalled him to Venezuela. Determined to defend himself against the charges, Medina renounced his diplomatic status and surrendered to the jurisdiction of the Circuit Court for the City of Alexandria. On May 29, 1997, Medina was acquitted by a jury of all charges except the misdemeanor of simple assault and battery under Virginia Code § 18.2-57, for which he was fined $2,000 and ordered to pay the state's costs of prosecution. In considering the charge, the jury was instructed that, under Virginia law, simple assault and battery is "any bodily hurt, however slight, done to another in any angry, rude or vengeful manner." J.A. 187.

Because of the unusual circumstances surrounding Medina's case, the Washington Post published an article about the verdict, noting

that, although he had been acquitted of most charges, Medina was convicted of "misdemeanor assault" of "his former fiancee[.]" J.A. 104. The article also stated that "[t]he misdemeanor conviction is unlikely to affect Medina's immigration status[.]" When INS Special Agent Stephen C. Adaway read the newspaper article, however, he was unconvinced by the Post's legal conclusions. Adaway decided to pursue an inquiry into whether Medina had committed a crime involving moral turpitude ("CIMT") within the meaning of 8 U.S.C. § 1227(a)(2)(A)(i), rendering him subject to deportation. Upon examining the record of Medina's state court conviction, Adaway concluded that Medina had committed a CIMT based on the "nature of the relationship between Mr. Medina and the victim, his fiancee, and the nature of the associated charges[.]" J.A. 96. After reaching this conclusion, Adaway requested, through proper channels, an arrest warrant from the INS Assistant District Director of Investigations. The Assistant Director reviewed and approved Adaway's request, issuing an INS warrant on June 23, 1997, for Medina's arrest. J.A. 56. *See* 8 C.F.R. § 239.1(a)(3) (authorization for Assistant Director to issue arrest warrants).

Adaway and other INS agents executed the warrant at Medina's residence in Arlington, Virginia, on the morning of July 2, 1997. Medina surrendered peaceably and was detained until later that afternoon, when he posted a $7,500 bond. On July 10, 1997, Medina filed a motion to terminate the deportation proceedings on the ground that simple assault and battery was not a CIMT. The INS eventually agreed with Medina, and on August 15, 1997, it filed a "nonopposition" to Medina's motion. Soon thereafter, an Immigration Judge granted Medina's motion and terminated the proceedings.

## B.

On November 17, 1998, Medina filed an administrative claim for damages pursuant to the FTCA, which the INS denied on April 13, 1999.[1] Thereafter, Medina, on October 6, 1999, filed his complaint in

---

[1]Pursuant to the provisions of 28 U.S.C. § 2675(a), "An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing[.]"

the district court. The four bases for recovery embodied in the complaint were: (1) assault and battery; (2) false arrest; (3) malicious prosecution; and (4) infliction of emotional distress. The court, by its June 19, 2000 Order, granted summary judgment to the Government, concluding that "probable cause existed to believe that plaintiff was deportable on the basis of being convicted of a crime of moral turpitude. Because each of the counts in this lawsuit emanates from the assumption that Adaway lacked probable cause . . . each count fails as a matter of law." J.A. 243-44. Medina now appeals, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

The FTCA represents a limited congressional waiver of sovereign immunity for injury or loss caused by the negligent or wrongful act of a Government employee acting within the scope of his or her employment. The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred. 28 U.S.C § 1346(b); *Harris v. United States*, 718 F.2d 654, 656 (4th Cir. 1983). The FTCA does not create new causes of action; instead, it "serves to convey jurisdiction when the alleged breach of duty is tortious under state law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law." *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 969 (4th Cir. 1992). Since the INS officials' alleged torts occurred in Virginia, the substantive law of Virginia applies. *See United States v. Neustadt*, 366 U.S. 696, 706 n.15 (1961).

## A.

Before we reach the merits of Medina's claim, we must be assured that Congress has waived sovereign immunity. Medina asserts a cause of action under § 1346(b). However, 28 U.S.C. § 2680 provides for various exceptions to the FTCA. If any of those exceptions apply, we are constrained to dismiss Medina's complaint — even though the Government has not raised the issue — inasmuch as the United States is immune from suit "without the consent of Congress." *United States v. Bankers Ins. Co.*, 245 F.3d 315, 320 (4th Cir. 2001) (quoting *Block v. North Dakota*, 461 U.S. 273, 287 (1983)). Because the Govern-

ment's potential immunity from suit affects our jurisdiction, we first consider whether Congress has waived sovereign immunity in this instance. *See Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 140 (2d Cir. 1999) ("[T]he Government's past failure to raise the defense of sovereign immunity in no way prevents this Court from considering the issue now."); *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000) ("[S]overeign immunity advances a jurisdictional bar . . . which the court may raise sua sponte[.]"); *cf. Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997) ("We believe that, because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even sua sponte.").

B.

1.

Pursuant to § 2680(h), certain types of intentional torts are exempted from liability under the FTCA. Three of Medina's four claims for relief — assault and battery, malicious prosecution, and false arrest — potentially implicate these exemptions. However, the § 2680(h) exemptions do not apply to (and the Government may be liable for) these torts when committed by federal investigative or law enforcement officers. We are satisfied that the INS agents involved meet this definition. *See Caban v. United States*, 728 F.2d 68, 72 (2d Cir. 1984) ("INS agents are 'investigative or law enforcement officers' within the meaning of [§ 2680(h)]."); *compare* 28 U.S.C. § 2680(h) (definition of "investigative or law enforcement officer") *with* 8 U.S.C. § 1357 (powers of INS agents).

2.

We nevertheless conclude that all of Medina's claims fall within another exemption in § 2680. Although the provisions of this subsection, § 2680(a), have also not been raised as a defense or a jurisdictional bar by the Government, § 2680(a) provides that the United States has not consented to liability for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of

a statute or regulation, whether or not such statute or regula-
tion be valid, or based upon the exercise or performance or
the failure to exercise or perform a discretionary function or
duty on the part of a federal agency or an employee of the
Government, whether or not the discretion involved be
abused.

Thus, pursuant to its provisions, § 2680(a) establishes two possible
exceptions to the FTCA's general waiver of sovereign immunity: (1)
if the INS officials exercised due care in the execution of their powers
under 8 U.S.C. § 1226; or (2) if the INS officials were performing a
discretionary function or duty in arresting Medina. Because we con-
clude that the INS agents were carrying out such a discretionary func-
tion, we need only address and answer the second inquiry.

### C.

Federal courts have struggled somewhat in deciding (1) the types
of conduct the § 2680(a) discretionary function exception protects;
and (2) whether and how to apply the exception in cases brought
under the intentional tort proviso found in § 2680(h). The Supreme
Court has provided guidance in unraveling the former mystery; the
latter question, on the other hand, remains unsettled. Still, we tread
through this area with substantial assistance from our sister circuits.
We start with the latter problem: the application of the discretionary
function exception in § 2680(a) to claims brought pursuant to the
intentional tort proviso of § 2680(h).

### 1.

Since the intentional tort proviso in § 2680(h) specifically autho-
rizes suits for, inter alia, malicious prosecution and false arrest, "it has
been suggested that congressional intent will be defeated if immunity
is afforded pursuant to section 2680(a) in suits brought under the pro-
viso to section 2680(h)." *Gray v. Bell*, 712 F.2d 490, 507 (D.C. Cir.
1983). The district court in *Townsend v. Carmel*, 494 F. Supp. 30, 36-
37 (D.D.C. 1980), took such a position, holding that suits under
§ 2680(h) did not have to clear the discretionary function "hurdle."

However, we are convinced that the D.C. Circuit resolved this question correctly in its decision in *Gray*. When asked to determine whether the discretionary function exception in § 2680(a) applied to law enforcement torts under § 2680(h), the Court of Appeals concluded that the two sections of the statute exist independently. Eschewing any theory that § 2680(h) overrode § 2680(a), the court explained that § 2680(a) explicitly renders the FTCA's waiver of sovereign immunity inapplicable to "*any* claim based upon [a discretionary function.]" *Gray*, 712 F.2d at 507. We must assume that, when Congress amended § 2680(h) in 1974, it was aware of § 2680(a) and its contours. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-97 (1979) ("It is always appropriate to assume that our elected representatives . . . know the law[.]"). Furthermore, any incongruity between the two sections can easily be reconciled. *Gray*, 712 F.2d at 507; *see also Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994) ("If [the United States] can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under § 2680(h)."); *Jackson v. United States*, 77 F. Supp. 2d 709, 714 (D. Md. 1999) ("The Court holds that a FTCA plaintiff must first overcome the discretionary function 'hurdle' before the Court will consider intentional tort claims under § 2680(h)."); *but see Sutton v. United States*, 819 F.2d 1289, 1295 (5th Cir. 1987) (rejecting idea that discretionary function hurdle must always be overcome because "[such] construction of the statute would result in judicial repeal of the law enforcement proviso by rendering its authorization of suits for malicious prosecution, which frequently arise out of, or in connection with discretionary acts, superfluous").

Thus, we are called upon to reconcile these two statutory provisions, and to determine the bounds of the discretionary function exception found in § 2680(a). In doing so, we begin with the principle that "[f]ederal officials do not possess discretion to violate constitutional rights or federal statutes." *United States Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988); *see also Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1196 (D.C. Cir. 1986). In this case, Medina does not allege that the INS agents violated either the Constitution of the United States or any federal statutes or regulations. He merely alleges that violations of Virginia law

occurred during the issuance and execution of an INS warrant by federal officials.[2] Of course, the very purpose of the § 2680(a) discretionary function exemption is to immunize certain agency conduct that might violate state law.

We therefore conclude that the actions underlying intentional tort allegations described in § 2680(h), if authorized and implemented consistent with federal law and the Constitution of the United States, may be considered discretionary functions under § 2680(a), even if they would otherwise constitute actionable torts under state law. *See Jackson*, 77 F. Supp. 2d at 714 (citing *Garcia v. United States*, 896 F. Supp. 467 (E.D. Pa. 1995)). This result obtains from the necessity that federal officials be permitted without impediment to conduct the Nation's business in fifty independent, yet constitutionally inferior, legal jurisdictions. Hence, this case presents exactly the sort of situation that the discretionary function exception seeks to address. If Congress intended a contrary result by its enactment of § 2680(h), it did not so indicate. Therefore, Medina's FTCA claims of intentional torts under § 2680(h) must clear the § 2680(a) discretionary function hurdle; we now turn to whether his claims have done so.

2.

When the D.C. Circuit confronted the discretionary function exception in *Gray*, it noted that "[b]ecause the obscurity of this area is matched only by its wealth of conclusory analytical labels, wading through the relevant case law is surprisingly difficult." *Gray*, 712 F.2d at 507. However, since *Gray*, the Supreme Court has clarified the issue. In *Berkovitz*, the Court established a two-pronged test to employ in determining whether the discretionary function exception applies. In order for the exception to apply, the challenged conduct must "be the product of judgment or choice," i.e., the exception does

---

[2]Although it is not relevant to our resolution of this appeal, *see infra*, we note that Virginia may well provide immunity to officers who make a mistake of law in effectuating an arrest and prosecution. *See DeChene v. Smallwood*, 311 S.E.2d 749, 751 (Va. 1984). And the United States is entitled to avail itself of any defenses its agents could raise in their individual capacities. *See Norton v. United States*, 581 F.2d 390, 395 (4th Cir. 1978).

not apply when the employee is merely following "a federal statute, regulation, or policy [that] specifically prescribes a course of action." *Berkovitz*, 486 U.S. at 536. Second, the challenged conduct must be "based on considerations of public policy." *Id.* at 537.

a.

The conduct of the INS officials in this case clearly meets the first prong of the *Berkovitz* test. Pursuant to 28 U.S.C. § 1226(a), "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added).[3] Indeed, the district court inquired of Medina's attorney on exactly this point:

> Mr. Rosenthal:   There was no requirement even for an arrest in this case. . . . [F]requently in these types of cases, with one or two misdemeanors, a mere notice is provided.
>
> The Court:   Of course, that's discretionary with the officer making those decisions . . . .
>
> Mr. Rosenthal:   I believe it is.[4]

J.A. 216. In short, the INS was presented with the evidence of Medina's conviction for assault under Virginia law. Under 28 U.S.C. § 1227(a)(2)(A)(i), an alien admitted to the United States in the last

---

[3]Under 28 U.S.C. § 1226(c)(1)(C), the INS's discretion is less clear. It provides that "the Attorney General *shall* take into custody any alien who [is deportable for committing a CIMT and] *has been sentence[d] to a term of imprisonment of at least 1 year*." (emphasis added). Since Medina did not fit this scenario, the decision to detain him arose under § 1226(a).

[4]This admission by Medina relates to the INS's decision to arrest him, as opposed to issuing a Notice to Appear ("NTA"). Had the INS only issued an NTA — which merely directs an alien to appear before an Immigration Judge — Medina would not possess a claim for false arrest or assault and battery stemming from the arrest. To the extent any claim for malicious prosecution would survive, we are convinced that the decision to issue the NTA would also be excepted from the FTCA waiver of sovereign immunity as a discretionary function. *See infra.*

five years is deportable if he is (1) convicted of a CIMT, and (2) is convicted of a crime for which a sentence of one year or longer may be imposed. Since Medina's conviction was for a crime that could have resulted in a sentence of one year, the INS was charged with determining whether Medina's crime was one involving moral turpitude.

Moral turpitude "is a nebulous concept, which refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, contrary to the rules of morality and the duties owed between man and man, either one's fellow man or society in general." *Matter of Danesh*, 19 I. & N. Dec. 669, 670 (BIA 1988). The concept has been a part of our immigration laws for over one hundred years. *See Jordan v. De George*, 341 U.S. 223, 229 n.14 (1951) (discussing history of "moral turpitude" in immigration laws). It is no coincidence that Congress did not define the term, instead committing its interpretation to "future administrative and judicial interpretation." *Cabral v. United States*, 15 F.3d 193, 195 (1st Cir. 1994).

It seems evident, then, that the INS's decision to assert that Medina had in fact committed a CIMT was a quintessential exercise of its broad discretion. *See*, *e.g., In re Bahta*, Interim Dec. 3437, 2000 WL 1470462 (BIA 2000) ("[T]he Service still has prosecutorial discretion, which includes the discretion to address the equities of individual cases in a manner that the rigid application of a broadly drawn statute often will not allow."); *In re G-N-C*, Interim Dec. 3366, 1998 WL 646918 (BIA 1998) ("We recognize that the decision to institute deportation proceedings involves the exercise of prosecutorial discretion[.]"). Since prosecutorial discretion is, by definition, a "choice," we are satisfied that the decision to arrest Medina and institute deportation proceedings satisfies the first prong of the *Berkovitz* test.[5]

---

[5]To the extent Medina would argue that the INS's choice to assert he had committed a CIMT was foreclosed by either *In re Fualaau*, 21 I. & N. Dec. 475 (BIA 1996), or Virginia law, we disagree. *See Fallau*, 21 I. & N. Dec. at 477 ("Simple assault is not considered to be a crime involving moral turpitude."); *Godbolt v. Brawley*, 463 S.E.2d 657, 660 (Va. 1995) (same, under Virginia law for impeachment of witnesses). First, we note that Virginia law does not control the definition of CIMT.

b.

The second prong of the discretionary function test is that the challenged conduct must implicate considerations of public policy. *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). This second prong exists because the very purpose of the discretionary function exception is to prevent judicial "second-guessing" of administrative decisions grounded in social and political policy. *Id.*

We recognize at the outset that "if a government employee has discretion under the first *Gaubert* prong, it 'must be presumed' that his acts 'are grounded in policy when exercising that discretion[.]'" *Ber-*

*Cabral*, 15 F.3d at 196 n.5 ("[T]he definition of a CIMT [under the immigration laws] is a matter of federal law."). Second, we have concluded that other authorities — cited approvingly in *Fallau* — leave room for a simple assault to be a CIMT. *See Matter of Perez-Contreras*, 20 I. & N. Dec. 615, 618 (BIA 1992) ("Simple assault is *generally* not considered to be a crime involving moral turpitude.") (emphasis added); *Danesh*, 19 I. & N. Dec. at 671 (same). Third, in *Fallau*, a central issue was that the state of mind required under the Hawaii statute was recklessness, whereas in Medina's case a conviction for simple assault and battery in Virginia requires general intent that the battery has been accomplished in an "angry, rude, or vengeful manner." Model Virginia Jury Instructions, Criminal No. 37.300; J.A. 187. *Fallau*, 21 I. & N. Dec. at 478 ("analysis of an alien's intent is critical to a determination regarding moral turpitude"). Indeed, the BIA called Fallau's case one "of first impression" and considered it en banc. That the BIA believed it necessary to convene en banc to determine whether a conviction under Hawaii's simple assault statute was a CIMT speaks volumes about the instant case. Moreover, Fallau pleaded guilty to recklessly inflicting bodily injury, *id.* at 476, arguably a crime with elements less indicative of moral turpitude than that of which Medina was convicted. Put simply, the BIA is constantly reevaluating these issues, and each case is different — the resolution turning on the statutory or common law elements of the particular state crime of conviction, and the record of conviction. *See In re Ajami*, Interim Dec. 3405, 1999 WL 487022 (BIA 1999). We are loathe to conclude that, given the uncertainty and ambiguity surrounding the term "moral turpitude" and the BIA's constant struggle with these issues, that no discretion existed to assert that Medina had committed a CIMT.

*naldes v. United States*, 81 F.3d 428, 429 (4th Cir. 1996) (quoting *Gaubert*, 499 U.S. at 324)).

Furthermore, we find it significant that Medina's crime was carried out against his former fiancee, Maria Bracho. The INS — which is statutorily authorized to administer the immigration laws and determine what constitutes a CIMT — has, in the past several years, taken steps to assert that crimes of assault upon victims that have a "special relationship" with the assaulter may be a CIMT. *See In re Tran*, 21 I. & N. Dec. 291, 292-93 (BIA 1996) (concluding that acts of violence against someone in a special relationship with the assaulter is "different from [assault] between strangers or acquaintances," and is a CIMT); *Grageda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993) (holding that spousal abuse is a CIMT); *Toutounjian v. INS*, 959 F. Supp. 598, 603 (W.D.N.Y. 1997) ("[S]exual or physical abuse of women or children has been almost uniformly found to involve a crime of moral turpitude.").

Medina strenuously contends, however, that this fact is irrelevant since (1) it was not an element of the offense of conviction (as in *Tran* and *Grageda*) and (2) his special relationship with the victim was mentioned nowhere in the record of conviction; indeed, Adaway was aware of Medina's relationship with his ex-fiancee only as a result of the newspaper article. We acknowledge authority in support of Medina's stance, *see, e.g.*, *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) (holding that the "particular familial relationship allegedly involved in the crimes" was not relevant since it was not included in the record of conviction), but the INS certainly had the discretion to assert otherwise.[6] Indeed, there are significant and persuasive legal bases for the INS to take such a position.[7]

---

[6]Even if the INS abused its discretion in so asserting, Medina would not be able to present an FTCA claim. Section 2680(a) specifically provides that the discretionary function exception exists "whether or not the discretion involved be abused."

[7]The rule excluding facts of the crime from a determination of CIMT has been harshly and persuasively criticized at times (including recently) in the courts. *See, e.g., Michel v. INS*, 206 F.3d 253, 268-71 (2d Cir. 2000) (Calabresi, J., dissenting) ("Given the fact that this definition of 'moral turpitude' appears to require some analysis of whether a particular

At bottom, the INS's decision to arrest Medina was clearly clothed in public policy considerations. Faced with a record evincing the undisputed fact of his conviction, a decision was made, based on Medina's special relationship with his victim, to assert that Medina's conviction constituted a CIMT under the immigration laws. Even though the INS ultimately decided not to pursue the deportation of Medina, we are fully satisfied that the initial decision to initiate proceedings and arrest him was the type of agency conduct Congress intended to immunize in the discretionary function exception found in § 2680(a). *See, e.g.*, *Sloan v. United States Dep't of Housing and Urban Dev.*, 236 F.3d 756, 760 (D.C. Cir. 2001) ("The decision to initiate a prosecution has long been regarded as a classic discretionary function.").

### III.

Pursuant to the foregoing, we vacate the order below and remand to the district court with instructions that the complaint be dismissed.

*VACATED AND REMANDED WITH INSTRUCTIONS*

---

crime is 'inherently base, vile, or depraved, [etc.,]' it is hard to understand how the gravity of the crime can play *no* part in the inquiry.") (emphasis in original); *Marciano v. INS*, 450 F.2d 1022, 1026-31 (8th Cir. 1971) (Eisele, J., dissenting); *Tillinghast v. Edmead*, 31 F.2d 81, 84 (1st Cir. 1929) (Anderson, J., dissenting); *Zgodda v. Holland*, 184 F. Supp. 847, 849 (E.D. Pa. 1960) ("Counsel's argument makes a powerful appeal to reason and conscience. It poses the question whether the moral quality of an act can be assessed apart from the impact of attendant circumstance. Unfortunately for this petitioner, the question is not an open one. We regret that we are not free, as we understand the law, to go back of the convictions.").