Jean Elizabeth **KAUFMAN**, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civil Action No. 1:12–0237.

United States District Court, S.D. West Virginia, at Bluefield.

Signed Jan. 7, 2015.

Jean Elizabeth Kaufman, Barboursville, VA, pro se.

John Fulton Gianola, Stephen M. Horn, U.S. Attorney's Office Charleston, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

DAVID A. FABER, Senior District Judge.

■ A bench trial in the above-styled case was held on June 24–25, 2014.[1] Having reviewed the case, the court concludes that the United States has not waived its sovereign immunity to suit under the Federal Tort Claims Act ("FTCA") with regard to plaintiff's claims. Without such a waiver, this court does not have subject-matter jurisdiction over the controversy. Accordingly, plaintiff's complaint, (Doc. No. 4), is DISMISSED.

### I. Factual Background and Procedural History

The instant dispute arises out of an incident that occurred at Federal Prison Camp Alderson ("FPC Alderson") on January 28, 2008, where plaintiff was incarcerated at the time. At approximately noon on the day in question, plaintiff was waiting in line for lunch at the facility's dining hall. (Doc. No. 153–1 at 18). Senior Officer Harrison Baynard, Jr., a member of FPC Alderson's staff, was monitoring the lunch line and reprimanded another inmate, Brandy Stevens, for entering the dining hall through an exit door. (Doc. No. 153–1 at 18). Officer Baynard sent Stevens out of the dining hall and directed her to re-enter through the correct door. (Doc. No. 153–1 at 14). When Stevens resumed her place in the lunch line, plaintiff remarked to Stevens, sarcastically, "That was real important," referring to Officer Baynard's instruction to Stevens. (Doc. No. 153–1 at 14, 18).

Officer Baynard overheard plaintiff's comment and ordered her to approach him. (Doc. No. 153–1 at 14). He instructed plaintiff to refrain from making comments that would hinder the authority of FPC Alderson staff. *Id.* Plaintiff responded that she was not talking to him when she made the remark and that her civil and First Amendment rights allowed her to say whatever she chose. *Id.* The two began to argue and Officer Baynard ordered plaintiff to follow him outside of the dining hall and surrender her identification card. *Id.* According to Officer Baynard, he wanted to address plaintiff outside the presence of other inmates. *Id.*

Plaintiff and Officer Baynard present different accounts of what happened next. Plaintiff contends that, once they were outside, Officer Baynard screamed obscenities at her while she quietly asked him to stop. (Doc. No. 153–1 at 18). Officer Baynard

---

1. Because this case was tried before the court as a bench trial, the court's findings are presumed to be based on admissible evidence. *Fishing Fleet, Inc. v. Trident Ins. Co., Ltd.*, 598 F.2d 925, 929 (5th Cir.1979); *see also Chicago Title Ins. Co. v. IMG Exeter Assoc. Ltd. P'ship*, 985 F.2d 553, 1993 WL 27392, at *4 (4th Cir.1993) (unpublished); *see also Harris v. Rivera*, 454 U.S. 339, 346, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."). Accordingly, the court finds it unnecessary to rule on each separate objection raised by the parties. The court has considered those objections relating to the evidence supporting the findings contained herein and, to the extent such objections relate to the evidence which the court cites in support of its findings, such objections are hereby overruled.

maintains that plaintiff continued to argue with him about her constitutional rights and escalated the situation. (Doc. No. 153–1 at 15). He denies cursing at plaintiff. *Id.*

However, the parties agree that, at some point during the interaction, Officer Baynard ordered plaintiff to put her hands on the wall and submit to a pat search. (Doc. No. 153–1 at 15, 18). Both parties agree that, during the pat search, plaintiff began to turn around when Officer Baynard touched her right jacket pocket. *Id.* In plaintiff's version of events, Officer Baynard then "slam[med her] into the wall repeatedly," face-forward, while she yelled "I want to see the Captain; I don't want to deal with you!" (Civil Action No. 1:10–cv–0071, Doc. No. 1; Doc. No. 38 at 2–3). Plaintiff maintains that Officer Baynard "grabbed [her] arm and neck and ... slung [her] to the ground approximately six feet away from the building." (Civ. Action No. 1:10–0071, Doc. No. 1). According to plaintiff, Officer Baynard then "planted his knee in [her] back, dropping his full weight upon [her]." *Id.*

According to Officer Baynard, after plaintiff took her right hand from the wall, he attempted to place her hand back on the wall, but plaintiff resisted. (Doc. No. 153–1 at 15). Plaintiff began flailing her arms, and again tried to turn around. *Id.* Officer Baynard stated that he was concerned about plaintiff's intentions and "was trying to be more defensive with her than offensive." *Id.* While plaintiff kept trying to move away from him, he attempted to restrain her. *Id.* Though he initially attempted to pin plaintiff to the wall, she continued to flail her arms and he decided to place her on the ground. *Id.* According to Officer Baynard, as plaintiff attempted to move away from him, her momentum caused her to fall, and, as a result, he did not need to use extreme measures to place plaintiff on the ground. (Doc. No. 153–1 at 15–6). As plaintiff laid face down, Officer Baynard contends that she was "flinging her arms and legs around" in an attempt to turn over onto her back. (Doc. No. 153–1 at 16). He took hold of her hands and placed them behind her back. *Id.*

The parties agree that plaintiff continued to shout throughout the incident. (Doc. No. 153–1 at 16, 18). Plaintiff contends that she yelled "[Y]ou didn't even warn me, you're not supposed to touch me, I want to see the Captain, don't touch me." (Doc. No. 153–1 at 18). Officer Baynard contends that plaintiff yelled "Don't touch me. Anyone can touch me but him!" (Doc. No. 153–1 at 16). In all, Officer Baynard estimates that the entire incident lasted twenty seconds before other FPC Alderson staff members arrived, having heard the commotion. *Id.*

Upon the arrival of support staff, Officer Baynard stepped back from plaintiff as other staff members helped her to her feet. (Doc. No. 153–1 at 16, 18). Captain Vicky Dupuis, who responded to the incident, saw plaintiff "turn[] and scream[] towards Officer Baynard ... 'Don't let him touch me!' ". (Doc. No. 153–2 at 3). Captain Dupuis then took plaintiff to her office. *Id.*

After making a statement, plaintiff was examined by FPC Alderson's medical staff and released back to her housing unit. (Doc. No. 153–1 at 18). Officer Baynard also reported to Health Services for an injury assessment after the incident. (Doc. No. 153–1 at 16). Medical staff noted that plaintiff suffered lower back pain and a back spasm as a result of the incident, while Officer Baynard did not sustain any injuries. (Doc. No. 153–2 at 5, 22, 23).

Almost immediately, FPC Alderson administrators began conducting an internal investigation of the incident. (Doc. No. 153–2 at 5). After speaking with plaintiff, Captain Dupuis interviewed Officer Bay-

nard and contacted a Correctional Services Administrator. *Id.* When asked whether Officer Baynard's immediate use of force was justified, Captain Dupuis responded that it was. *Id.*

Two days after the incident, plaintiff asserted that she had bruising on her body that she wished to document. *Id.* As all female medical staff members were unavailable, Captain Dupuis photographed plaintiff. *Id.* She noted "bruising to [plaintiff's] left elbow, the right triceps area, 1 small bruise to her upper back, a large bruise to her right lower back, and an abrasion to her right forearm." *Id.*

Anthony Hussion of the Office of Internal Affairs investigated the incident. (Doc. No. 153–1 at 8). After interviewing both inmates and FPC Alderson staff members, Hussion's investigation revealed insufficient evidence to substantiate plaintiff's claim of excessive force. (Doc. No. 153–1 at 11). Hussion noted that FPC Alderson staff who responded to the incident did not observe Officer Baynard use excessive force and "no other facts presented" indicated excessive force. *Id.* For her part in the incident, plaintiff was convicted of violating Rule 307, Refusing to Obey an Order of Any Staff Member. (Doc. No. 38 at 3).

On January 25, 2010, plaintiff filed a claim pursuant to 42 U.S.C. § 1983 and the FTCA. (Civil Action No. 1:10–cv–0071, Doc. No. 1). Plaintiff's § 1983 claim was later recharacterized as a *Bivens* claim and dismissed. This court dismissed plaintiff's initial FTCA claim as premature because she failed to exhaust her administrative remedies. After plaintiff exhausted these remedies, she resubmitted her FTCA claim and initiated the instant action.

In this action, plaintiff asserts two claims pursuant to the FTCA. First, plaintiff alleges that Officer Baynard assaulted and battered her during the above-de-

scribed incident, from which she suffered "possible permanent injury" as well as exacerbated pre-existing PTSD symptoms. Second, plaintiff asserts a negligence claim; specifically, that FPC Alderson officials knew that Officer Baynard had a history of acting inappropriately with female inmates but failed to protect inmates from him. The court will discuss each of these claims in turn.

## II. Plaintiff's Claim of Assault and Battery Under the FTCA

### A. The Discretionary Function Exception and Law Enforcement Officers

By bringing suit pursuant to the FTCA, plaintiff asserts a claim against the United States, arguing that the Government is responsible for Officer Baynard's alleged acts. As a sovereign, the United States enjoys immunity from suits unless Congress expressly waives that immunity. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Without a waiver of sovereign immunity, a court does not have subject-matter jurisdiction to adjudicate a case. *Id.* at 587–88, 61 S.Ct. 767 (citing *Luckenbach S.S. Co. v. United States,* 272 U.S. 533, 536, 47 S.Ct. 186, 71 L.Ed. 394 (1926)).

For those plaintiffs asserting tort claims against the Government, Congress issued a limited waiver of sovereign immunity in the FTCA. Under this statute, the United States waives sovereign immunity for claims of "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1) (2012). Thus, the FTCA allows a plaintiff to hold the Government liable in tort in the same way he or she could hold a private person liable. *Medi-*

na v. United States, 259 F.3d 220, 223 (4th Cir.2001).

However, the FTCA's waiver of sovereign immunity is narrow and subject to a number of exceptions, with the majority codified in 28 U.S.C. § 2680. The most important of these exceptions, the discretionary function exception, is codified in subsection (a). Under this exception, the waiver of sovereign immunity does not extend to a claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (2012). As a result, a court lacks subject-matter jurisdiction to adjudicate a claim where a Government actor performed a discretionary function or duty that resulted in tortious conduct.

Furthermore, subsection (h) of § 2680 carves out an exception for intentional torts, as well. Pursuant to subsection (h), the waiver of sovereign immunity does not extend to intentional torts, including assault and battery. Therefore, a court does not have subject-matter jurisdiction when a plaintiff claims a Government actor committed an intentional tort against him or her.

▮ But the FTCA treats law enforcement officers and investigators differently. While the first portion of § 2680(h) bars intentional tort claims, later in the same sentence, the statute allows a plaintiff to bring a claim against a law enforcement officer or investigator alleging: assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. And, this exception covers law enforcement officers and investigators as governmental actors, rather than their duties: the Government may be held liable when a law enforcement officer commits a tort outside of the scope of his employment, even if it had nothing to do with law enforcement or investigation. See Ignacio v. United States, 674 F.3d 252, 253 (4th Cir.2012).

Courts have struggled to reconcile the law enforcement carve-out codified in section 2680(h) with the blanket exceptions codified in section 2680(a). Should courts read subsection (h) separately from subsection (a), meaning that a claim brought under subsection (h) is not subject to the discretionary function exception and a court always has subject-matter jurisdiction? Or should courts read the two subsections in conjunction with each other, meaning that a claim brought under subsection (h) is first subject to the discretionary function exception of subsection (a), and a court must determine whether the United States has waived sovereign immunity?

In Medina v. United States, the Fourth Circuit concluded that courts must read the two subsections together. 259 F.3d 220, 226 (4th Cir.2001). Medina, a diplomat, was indicted on a number of charges, including attempted rape, burglary, and simple assault and battery. Id. at 222. Although he was acquitted on all charges except simple assault and battery, INS officials arrested Medina and initiated deportation proceedings. Id. After the INS terminated these proceedings, Medina filed a claim pursuant to the FTCA, claiming assault and battery, false arrest, malicious prosecution, and infliction of emotional distress in conjunction with his arrest. Id. at 223.

▮▮ In the decision, the Fourth Circuit concluded that a plaintiff who alleges an intentional tort against a law enforcement officer or investigator pursuant to § 2680(h) must first clear the discretionary function hurdle codified in § 2680(a). Id. at 222, 226. Medina argued that INS agents committed assault and battery against him, in violation of state law, and

that he could hold the United States responsible for these violations of state law. *Id.* at 225. But the court found that "the very purpose of the § 2680(a) discretionary function exemption is to immunize certain agency conduct that might violate state law." *Id.* at 225–26. Therefore, actions that underlie a plaintiff's intentional tort claim under § 2680(h) that are authorized by federal law "may be considered discretionary functions under § 2680(a), even if they would otherwise constitute actionable torts under state law." *Id.* at 226. As a result, the FTCA exceptions codified in § 2680(a) apply to § 2680(h) and any intentional tort claim against law enforcement officers or investigators.

After examining the INS agents' conduct under the discretionary function analysis, the court determined that the exception encompassed their actions. *Id.* at 226–29. Because the discretionary function exception applied, the United States had not waived sovereign immunity and the district court did not have subject-matter jurisdiction over the case. *Id.* at 229. As a result, the Fourth Circuit remanded the case to the district court with instructions to dismiss the case for lack of subject-matter jurisdiction. *Id.* at 222.

In light of *Medina*, plaintiff's intentional tort claim presents two questions: 1) whether her claim is subject to the discretionary function exception; and 2) if so, whether the discretionary function exception applies to deprive this court of subject-matter jurisdiction.

### B. Analysis of Plaintiff's Intentional Tort Claim Against a Law Enforcement Officer

■ The court begins its analysis by acknowledging that neither party has argued that this court lacks subject-matter

jurisdiction pursuant to any exception under the FTCA.[2] This does not mean that the court should not analyze subject-matter jurisdiction *sua sponte.* "[C]ourts ... have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)).

■ Indeed, courts cannot assume that subject-matter jurisdiction exists. *See In re Bulldog Trucking,* 147 F.3d 347, 352 (4th Cir.1998) ("It is a fundamental precept that federal courts are courts of limited jurisdiction, constrained to exercise only authority conferred by Article III of the Constitution and affirmatively granted by federal statute.") (internal quotations omitted). And, to determine whether subject-matter jurisdiction exists, the court is not limited to a plaintiff's complaint. *Luckett v. Bure,* 290 F.3d 493, 496–97 (2d Cir.2002) ("In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject-matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.") (internal quotations omitted); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). Therefore, before deciding the merits of plaintiff's case, the court must determine whether it has power to adjudicate the case and need not limit itself to plaintiff's complaint to reach its conclusion.

■ Under *Medina*, a plaintiff must overcome the discretionary function hurdle

---

**2.** The court notes that the Government moved the court to dismiss the case for lack of subject-matter jurisdiction based on plaintiff's failure to timely file her administrative claim.

(Doc. No. 8). The court accepted Magistrate Judge VanDervort's proposed findings and recommendation and denied the Government's motion. (Doc. No. 19).

before the court can reach the merits of any intentional tort claim against a law enforcement officer or investigator. In this case, plaintiff claims under § 2680(h) that a corrections officer committed an intentional tort against her. Corrections officers are law enforcement officers within the meaning of the statute. *Calderon v. Foster et al.,* 2007 WL 1010383, Civil Action No. 5:05–cv–00696 at *16 (S.D.W.Va. Mar. 30, 2007) (citing *Ortiz v. Pearson,* 88 F.Supp.2d 151, 164 (S.D.N.Y.2000)). Therefore, plaintiff must first clear the discretionary function exception of § 2680(a) in order for this court to find that the United States has waived sovereign immunity. If the court finds that Officer Baynard's act was a discretionary function or duty, the court must dismiss her claim against the United States for lack of subject-matter jurisdiction.

## C. Application of the Two–Part Discretionary Function Exception Test

Having determined that plaintiff's claim is subject to the discretionary function exception, the court next analyzes whether plaintiff's claim is based upon Officer Baynard's exercise of a discretionary function or duty. The Supreme Court has outlined a two-part test to ascertain whether the discretionary function exemption applies. First, a court must determine whether the governmental action at issue "involves an element of judgment or choice." *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). If the action is "the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action," then the governmental actor must adhere to the directive and the action does not involve an element of choice. *Baum v. United States,* 986 F.2d 716, 720 (4th Cir. 1993). If there is a mandatory directive on point, the plaintiff must show that the governmental actor failed to adhere to this standard. *Id.* (citing *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954).

However, if no mandatory directive exists, the court proceeds to the second prong of the two-part test. Under the second prong, a court must determine whether the challenged action is one "based on public policy considerations." *Berkovitz,* 486 U.S. at 531, 108 S.Ct. 1954. In this analysis, a court focuses on "the nature of the actions taken and on whether they are susceptible to policy analysis," rather than "the agent's subjective intent in exercising the discretion." *United States v. Gaubert,* 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). The Fourth Circuit has interpreted "public policy" broadly, covering everything from the INS's decision to initiate deportation proceedings in *Medina* to the National Park Service's decisions regarding bridge and guardrail maintenance. *See Baum,* 986 F.2d at 724. Notably, the absence of a mandatory directive creates a presumption that the discretionary function exception applies: "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert,* 499 U.S. at 324, 111 S.Ct. 1267.

The court finds that the first prong of the two-part test is satisfied because Officer Baynard's actions involved an element of choice and were not subject to a mandatory directive. Unsurprisingly, a number of regulations relate to conduct in federal prisons. The court notes, initially, that the BOP has a mandatory duty to "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3) (2012). However, courts recognize that this regu-

lation does not set forth the manner in which BOP officials must fulfill this duty, instead leaving it to BOP officials' discretion. *See Carter v. United States,* 57 Fed. Appx. 208 (4th Cir.2003) (unpublished); *Calderon v. United States,* 123 F.3d 947, 950 (7th Cir.1997).

In this case, two separate regulations address the conduct at issue. Title 28 of the Code of Federal Regulations, section 552.20 allows correctional officers to use force when deemed necessary, providing:

> The Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed. When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure institution security and good order.

(2014). Furthermore, 28 C.F.R. § 552.22 regulates the amount of force a corrections officer may use on an inmate:

> Staff shall use only that amount of force necessary to gain control of the inmate. Situations when an appropriate amount of force may be warranted include, but are not limited to:
>
> 1) Defense or protection of self or others;
>
> 2) Enforcement of institutional regulations; and

3) The prevention of a crime or apprehension of one who has committed a crime.

(2014). These regulations do not prescribe a course of conduct, but instead allow BOP staff to determine when force is necessary and the appropriate extent of that force, taking into account the circumstances of each specific situation. Consequently, Officer Baynard's actions fell under these regulations and involved an element of choice.

In this case, plaintiff violated FPC Alderson rules by displaying insolence toward Officer Baynard,[3] and plaintiff was convicted for her refusal to obey Officer Baynard's orders. Both parties agree that plaintiff made a sarcastic comment about Officer Baynard's order to another inmate. The two argued and, although she initially submitted, plaintiff began to resist while Officer Baynard conducted a pat-down search.[4]

Officer Baynard attested in his affidavit that he grew concerned about plaintiff's intentions. He attempted to diffuse the situation by first removing plaintiff from other inmates, then placing her hand back on the wall himself after plaintiff refused his order to do so. Plaintiff threw her arms into the air and screamed at Officer Baynard. Accordingly, 28 C.F.R. § 552.20 granted Officer Baynard the discretion to determine that force was appropriate and 28 C.F.R. § 552.22 granted Officer Baynard discretion to determine the necessary

---

**3.** 28 C.F.R. § 541.3 enumerates acts prohibited in a federal correctional facility. Listed within the "Moderate Severity Level Prohibited Acts," at # 312, an inmate may not display insolence toward a staff member.

**4.** The court notes that the evidence does not support plaintiff's contention that Officer Baynard repeatedly "slammed" her, face forward, against the wall. The Investigation Report and photographs provided by plaintiff

evidence bruising on plaintiff's lower back, the back of her right arm, and an abrasion on her right forearm. However, aside from a small bruise to her abdomen no larger than a quarter, plaintiff has provided no evidence that Officer Baynard injured her front torso, face, or hands. Indeed, while plaintiff complained of back injuries in the days after the incident, she made no complaints of injuries to her front.

force to bring plaintiff back under control. The court notes that Captain Dupuis agreed with Officer Baynard's determination that the use of force was appropriate in the situation and the Office of Internal Affairs' investigation yielded insufficient evidence of excessive force. Therefore, the court concludes that Officer Baynard's actions fall within the first prong of the two-part discretionary function test.

Notably, the court need not determine whether Officer Baynard abused his discretion. Under the statutory language of § 2680(a), even when a governmental actor abuses his or her discretion, the discretionary function exception still applies. 28 U.S.C. § 2680(a) (2014); *see also Calderon v. Foster et al.,* 2007 WL 1010383, Civil Action No. 5:05–cv–00696 at *6. While the court has not determined that Officer Baynard abused his discretion, even if he did, the discretionary function exception nevertheless would shield the Government from liability.

 The court finds that the second prong of the discretionary function test is satisfied, as well, because Officer Baynard's decision implicates public policy. The treatment of inmates in federal custody inherently involves public policy considerations. A BOP corrections officer makes hundreds of decisions daily regarding the safety and welfare of inmates and prison staff, as well as his or her own safety and welfare. Corrections officers must assure inmates' safety, and sometimes must do so by force. Yet they may only use force when appropriate and may not use excessive force.

As described above, upon a finding that the first prong is satisfied, a presumption arises that the second prong is also satisfied. Pursuant to *Gaubert,* as the court has determined that an established regulation allowed Officer Baynard to exercise his discretion, the court must presume that his act was grounded in policy consider-

ations. Consequently, the court finds that the second prong of the discretionary function test is satisfied.

This court has faced a similar set of facts previously and, again, concluded that the discretionary function exception prevented a plaintiff from raising an intentional tort claim against a corrections officer. In *Calderon v. Foster et al.,* the plaintiff, a prisoner at FCI Beckley, alleged that a corrections officer battered him when he kicked the plaintiff's cell door. 2007 WL 1010383, Civil Action No. 5:05–cv–00696 at *1 (Johnston, J.); *aff'd* 264 Fed.Appx. 286 (4th Cir.2008) (unpublished). The district court found that the BOP's regulations regarding disciplinary action covered the corrections officer's act. *Id.* at *6. As a result, the court found that the discretionary function exception applied to bar plaintiff's FTCA complaint. *Id.* at *9. The same reasoning applies to the instant case.

Importantly, the court in *Calderon* noted that Congress enacted the discretionary function exception to shield exactly the type of conduct at issue. *Id.* The Fourth Circuit has stated that the second prong "exists because the very purpose of the discretionary function exception is to prevent judicial 'second-guessing' of administrative decisions grounded in social and political policy." *Medina,* 259 F.3d at 228. In this case, Officer Baynard faced an inmate who repeatedly resisted as he conducted a pat search and, by her own admission, shouted at him throughout their encounter. The second-prong of the discretionary function exception prevents the court from acting as a "Monday morning quarterback" to determine whether Officer Baynard, who had mere seconds to settle on the appropriate course of action, should have used less force than he did to gain control of plaintiff.

Therefore, the court finds that it does not have subject-matter jurisdiction over plaintiff's claim that Officer Baynard assaulted and battered her. While this result may seem severe, it is important to note that an FTCA claim seeks to hold the Government responsible for the acts of its employees. Plaintiff does not bring suit against Officer Baynard. She brings suit against the United States. The statutory scheme of the FTCA excludes claims arising from a number of circumstances and plaintiff's case falls squarely within these omissions. Consequently, the court must dismiss plaintiff's intentional tort claim under the FTCA.

### III. Plaintiff's Negligent Supervision Claim Under the FTCA

 Plaintiff brings a second claim under the FTCA related to the incident on January 28, 2008: that the Government is responsible for BOP officials' alleged negligent supervision of Officer Baynard. Plaintiff claims that officials at FPC Alderson were aware that Officer Baynard had a history of acting inappropriately with female inmates and failed to supervise him properly.[5]

However, this claim as well falls within the discretionary function exception. Courts in the Fourth Circuit have long held that decisions regarding supervision of employees fall within the discretionary function exception. *See Suter et al. v. United States,* 441 F.3d 306, 312 n. 6 (4th Cir.2006); *LeRose v. United States,* 285 Fed.Appx. 93, 97 (4th Cir.2008) (unpublished); *Cash v. United States,* 2012 WL 6201123, Civ. No. WDQ–12–0563, at *10 (D.Md. Dec. 11, 2012).

The BOP's decision to hire and retain officer Baynard, as well as its supervision of him, involve elements of judgment and

choice. These decisions implicate public policy because they involve weighing competing candidate qualifications, determining staffing requirements, and evaluating Officer Baynard's performance. Decisions such as these fall squarely within the discretionary function exception. *See LeRose,* 285 Fed.Appx. at 97. Consequently, the court cannot exercise subject-matter jurisdiction over this claim either, and must dismiss it as well.

### IV. Conclusion

While neither party asserts that this court does not have subject-matter jurisdiction over this case, the court has an independent duty to ensure that subject-matter jurisdiction exists. Having conducted a review of the case and the FTCA, the court concludes that the United States has not waived its sovereign immunity. As a result, the court does not have subject-matter jurisdiction over plaintiff's claims. Accordingly, plaintiff's complaint, (Doc. No. 4), is **DISMISSED.** All motions related to trial (Doc. Nos. 88, 89, 94, 95, 97, 98, 99, 101, 109, 115, 124, 136) are hereby **DENIED** as moot.

The Clerk is **DIRECTED** to remove the case from the court's active docket and to send copies of this Order to plaintiff, pro se, and all counsel of record.

---

**5.** Neither plaintiff's complaint nor the evidence she presented at trial substantiate her claim.